IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

STAND UP AMERICA NOW,
WAYNE SAPP, and
PASTOR TERRY JONES

    Plaintiffs,

    v.                                             COMPLAINT
                                                      [Civil Rights Action under 42
                                                      U.S.C. § 1983]

CITY OF DEARBORN and RONALD HADDAD,
Chief of Police for the City of Dearborn Police
Department,

    Defendants.
_____/

THOMAS MORE LAW CENTER
Richard Thompson, Esq. (P21410)
Erin Mersino, Esq. (P70886)
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI 48106
emersino@thomasmore.org
(734) 826-2001
_____/

**COMPLAINT**

    Plaintiffs Stand Up America Now, Wayne Sapp, and Terry Jones, by and through their undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

1

## INTRODUCTION

1. This case seeks to protect and vindicate fundamental constitutional rights. It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' policy, practice, custom, and/or procedure of restricting Plaintiffs' right to engage in religious speech activity in a traditional public forum in the City of Dearborn (hereinafter "Free Speech Restriction").

2. The United States Supreme Court has long recognized that public fora has immemorially been held in trust for the use of the public, and, time out of mind, has been used for the purpose of assembly, communicating thoughts between citizens, and discussing public questions. The Supreme Court has emphasized that public land is the natural and proper place for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the please that it may be exercised in some other place. The public property in the City of Dearborn is no exception.

3. Defendants place restrictions on Plaintiffs' First Amendment rights which require that the Plaintiffs obtain a Special Events permit for a small group to assemble and engage in free speech on public property. The granting of the Special Events permit is contingent upon the Plaintiffs signing the City's unconscionable "Hold Harmless" agreement. (Ex. 1).

4. Plaintiffs seek a declaration that Defendants violated their clearly established constitutional rights as set forth in this Complaint; a declaration that Defendants' Free Speech Restriction violates the United States Constitution and 42 U.S.C. § 1983 as set forth in this Complaint; a declaration that through the enforcement and attempted enforcement of Defendants' Free Speech Restriction, Defendants have substantially burdened and unlawfully infringed upon Plaintiffs' rights to free speech and free assembly in violation of the United States

2

Constitution and 42 U.S.C. § 1983; a temporary restraining order, preliminary injunction, and permanent injunction enjoining the enforcement of Defendants' Free Speech Restriction as set forth in this Complaint; and nominal and compensatory damages for the harm caused by Defendants. Plaintiffs also seek an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PLAINTIFFS

7. Plaintiff Stand Up America Now is a religious organization incorporated under the laws of the State of Florida.

8. Stand Up America Now is established for the purpose of proclaiming the Holy Bible to Muslims and educating people about the threat of Sharia Law for our Nation's fundamental principles of freedom. As part of its outreach efforts, Stand Up America Now travels around the country speaking about Christianity at Muslim events and mosques. Stand Up America Now members and volunteers have the desire to practice their religious freedom.

9.      Plaintiff Wayne Sapp is an adult resident of Florida and one of the founders and leaders of Stand Up America Now.  He is a Christian minister with a deeply-held religious conviction to evangelize to non-Christians.  Evangelizing and public speaking about his religious beliefs is an important aspect of Plaintiff Sapp's religious beliefs and vocation.

10.     Plaintiff Pastor Terry Jones is an adult resident of Florida and a founder and leader of Stand Up America Now.  He is a Christian minister with a deeply-held religious conviction to evangelize to non-Christians.  Plaintiff Jones is the Senior Pastor of the Dove World Outreach Church.  Evangelizing and public speaking about his religious beliefs is an important aspect of Plaintiff Jones' religious beliefs and vocation.

## DEFENDANTS

11.     Defendant City of Dearborn (hereinafter "City") is a municipal entity organized and existing under the laws of the State of Michigan.  It is a municipal corporation with the right to sue and be sued.  The City and its officials are responsible for creating, adopting, and enforcing the rules, regulations, ordinances, laws, policies, practices, procedures, and/or customs of the City, including the Free Speech Restriction.

12.     Defendant Ronald Haddad is the chief of police for the City of Dearborn Police Department.  As the chief of police, he is responsible for creating, adopting, and enforcing the rules, regulations, ordinances, laws, policies, procedures, and/or customs of the City, including the Free Speech Restriction.  Defendant Haddad is sued in his official capacity only.

**STATEMENT OF FACTS**

13. The City is one of the most densely populated Muslim communities in the United States. It is estimated that out of 98,000 inhabitants, nearly 30,000 are Muslims. Consequently, the City is an important place for Plaintiff Stand Up America Now's outreach efforts.

14. Plaintiff Stand Up America Now and Plaintiffs Sapp and Jones seek to further their ministry by speaking in the grassy area open to the public across from the Dearborn Islamic Center on Saturday, April 7th, 2012.

15. The speech and discussion will encompass the views of Plaintiffs regarding the dangers of Sharia law and how it threatens American freedoms.

16. Plaintiff Stand Up America Now and Plaintiffs Sapp and Jones also plan to distribute literature in the form of one small flyer.

17. The flyer includes Stand Up America Now's contact information in addition to a quotation from the Holy Bible: Jesus answered, "I am the way and the truth and the life. No one comes to the Father except through me." John 14:6.

18. Plaintiffs chose the location in front of the Islamic Center in Dearborn to speak on Saturday, April 7, 2012 because Sharia law is the religious law of Islam, and the mosque represents Islam.

19. Plaintiffs believe that Sharia law limits freedoms, including the most vital freedoms of our American life such as the freedom of speech and freedom of religion. Therefore, the effect and imposition of Sharia law is the limiting of our freedoms guaranteed to us in the United States Constitution.

20. Furthermore the event date of Saturday, April 7, 2012 bears special significance to Plaintiffs as it is Holy Saturday in the Christian religion. The Plaintiffs view Holy Saturday as

the day after Jesus Christ died on the cross in the ultimate sacrifice and the day before Easter Sunday, the foundation of the Christian religion when the Plaintiffs believe that God gave mankind new life through the resurrection of Jesus Christ.

21. In order to secure the location to hold the event on April 7, 2012, Plaintiff Wayne Sapp completed a "Special Events Application and Request Form" with the City of Dearborn on February 16, 2012.

22. The City requires that "Any person desiring to sponsor a special event on any street of the city shall first obtain a permit therefore from the chief of police." City of Dearborn Ord. No. 17-28(a).

23. The City defines a "special event" as "any assembly . . . held on public property as defined in this article." City of Dearborn Ord. No. 17-27.

24. The City defines "assembly" broadly as "any event designed, promoted or conducted in order to encourage the gathering of people upon public property at a specified location and shall include any, ceremony, show, demonstration, exhibition, street dance, pageant, party, circus, concert, sporting event, game or similar activity." City of Dearborn Ord. No. 17-27.

25. Therefore, the City's ordinance requires a permit even when a small group of people seek to assemble.

26. Plaintiffs estimate that approximately 20-25 people will attend the event.

27. Plaintiffs did not request any services from the City.

28. Even though, Plaintiffs did not request any services from the City, the City under its ordinance code is allowed to force a party requesting a special events permit to indemnify the City—the indemnification agreement is subject only to the terms and unbridled discretion of the City's legal department.

29. The City's ordinance code mandates, "The applicant, the sponsor of the event, and the event organizer shall sign an indemnification agreement with terms established by the legal department." City of Dearborn Ord. No. 17-33.

30. On March 13, 2012, Lt. Robinson of the City of Dearborn Police Department responded via a letter to Plaintiff Sapp stating that he was "prepared to recommend the approval of this Special Event application."

31. Lt. Robinson's letter discusses the logistics of the event and states "it is requested that you complete and return the 'Hold Harmless' document prior to the commencement of your event."

32. The City's "Hold Harmless" agreement includes the following provisions:

   a. "In consideration for the right to utilize City of Dearborn property, Standup America! and Wayne Sapp, their employees, representatives, agents, and participants agree to RELEASE AND FOREVER DISCHARGE the City of Dearborn, a municipal corporation, and its officers, employees, and agents, from any and all claims, liabilities, or lawsuits, including legal costs and reasonable attorney fees, resulting from their activities on City of Dearborn property." (Ex. 1).

   b. "Standup America! and Wayne Sapp's employees, agents, representatives, and participants have been notified of this Release, are aware of, understand, and fully appreciate, all possible risks associated with the participation in their activities on City of Dearborn property. Stand up America! and Wayne Sapp do hereby expressly, voluntarily, and willingly assume all risk and dangers associated with the participation in the activities on City of Dearborn property on April 7, 2012.

> These risks could result in damage to property, personal, and/or bodily injury or death, including injuries or death to the individual participants." (Ex. 1).
>
> c. "Standup America! and Wayne Sapp hereby agree to defend, indemnify, and hold harmless the City of Dearborn, its officers, employees, agents, representatives, and departments from and against any and all claims and causes of action of any kind arising out of or in connection with their activities on City of Dearborn property." (Ex. 1).

33. Therefore, the City's "Hold Harmless" agreement requires that the Plaintiffs not only forfeit all legal rights they may have arising from the City's actions, the Plaintiffs must also defend and indemnify those actions—regardless of how egregious or disagreeable the City's action(s) may be and regardless if the City's action(s) result in "bodily injury or death to the individual participants." (Ex. 1).

34. On March 26, 2012, Lt. Robinson wrote a letter to Plaintiff Sapp which states that Plaintiff Stand Up America Now must sign the City's "Hold Harmless" agreement; otherwise Plaintiff Stand Up America Now and Plaintiffs Sapp and Jones cannot speak on the requested area of public property.

35. The City of Dearborn provided a list of events where they required a "similar" agreement to be signed.

36. The events in the City's list included only groups or events involving more than 20-25 participants.

37. The other groups in the list provided by the City involved some sort of running or marching.

38. The event Plaintiffs seek to hold does not involve any sort of physical exertion, and only involves free speech and the literature distribution of one small flyer.

39. On March 28, 2012, Lt. Robinson wrote another letter to Plaintiff Sapp which again insists that the "Hold Harmless" agreement must be signed prior to Plaintiffs speaking on April 7th, 2012.

40. Plaintiffs Stand Up America Now, Sapp, and Jones do not have insurance which would cover the City of Dearborn's one-sided "Hold Harmless" agreement.

41. Plaintiffs believe that obtaining insurance to cover the event in light of the City of Dearborn's "Hold Harmless" agreement poses exorbitant costs that neither Plaintiff Stand Up America Now nor Plaintiffs Jones or Sapp can afford.

42. Plaintiff Stand Up America Now and Plaintiffs Sapp and Jones cannot sign the "Hold Harmless" agreement.

43. Plaintiff Stand Up America Now and Plaintiffs Sapp and Jones still want to hold the event.

44. Plaintiff Stand Up America Now and Plaintiffs Sapp and Jones have incurred the following expenses in planning the event on April 7, 2012:

   a. Plaintiff Stand Up America Now has already purchased airline tickets for Plaintiffs Sapp and Jones and three other members totaling $3,024.37.

   b. Plaintiff Stand Up America Now has secured hotel rooms for Plaintiffs Sapp and Jones and three other members totaling $700.57.

   c. Plaintiff Stand Up America Now has arranged for Plaintiffs Sapp's and Jones' car rental in Michigan which totals $188.17.

45. Plaintiff Stand Up America Now and Plaintiffs Sapp and Jones want to hold the event for which they have planned and prepared and exercise their rights to peaceful free speech and assembly.

46. Plaintiffs cannot hold the event because of the high price and cost imposed by the City of Dearborn through its requirement of the "Hold Harmless" agreement.

47. Plaintiffs should not be forced to sign a one-sided, unconscionable contract subject only to the unbridled discretion of the City's legal department in order to exercise their constitutional rights.

48. The City's Free Speech Restriction imposes an unconstitutional burden on Plaintiffs' constitutional rights.

49. The City's Free Speech Restriction does nothing to further public safety interests.

50. Instead, the City's Free Speech Restriction imposes a monetary penalty on Plaintiffs for exercising their rights to free speech and free assembly.

51. The City's "Hold Harmless" agreement only serves to displace costs to Plaintiffs, which in effect accomplishes nothing other than charging and substantially burdening Plaintiffs for the exercise of their constitutional rights.

52. Defendants' Free Speech Restriction deprives Plaintiffs of their fundamental rights protected by the First and Fourteenth Amendments to the United States Constitution.

### FIRST CLAIM FOR RELIEF

**Freedom of Speech—First Amendment**
**(42 U.S.C. § 1983)**

53. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

54. By reason of the aforementioned Free Speech Restriction, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to engage in

religious expression in a traditional public forum in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

55. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and damages.

## SECOND CLAIM FOR RELIEF

### Freedom of Expressive Association—First Amendment
### (42 U.S.C. § 1983)

56. Plaintiffs hereby incorporate by reference all above-stated paragraphs.

57. By reason of the aforementioned Free Speech Restriction, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to expressive association guaranteed by the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

58. As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A) to declare that Defendants' Free Speech Restriction violates the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

B) to temporarily, preliminarily, and permanently enjoin Defendants' Free Speech Restriction and its application to Plaintiffs' speech and activities as set forth in this Complaint;

C) to award Plaintiffs appropriate nominal and compensatory damages as set forth in this Complaint;

D) to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

E) to grant such other and further relief as this Court should find just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury.

Respectfully submitted,

s/ Erin Mersino_____

THOMAS MORE LAW CENTER

Erin Mersino, Esq. (P70886)
24 Frank Lloyd Wright Blvd.
P.O. Box 393
Ann Arbor, MI 48106
(734) 827-2001
emersino@thomasmore.org