UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STAND UP AMERICA NOW,
WAYNE SAPP and TERRY JONES,

    Plaintiffs,

v.

Civil Action No. 12-11471
Honorable Denise Page Hood

CITY OF DEARBORN and RONALD
HADDAD,

    Defendants.

_____/

## ORDER GRANTING PLAINTIFFS'
## MOTION FOR TEMPORARY RESTRAINING ORDER

**I.    BACKGROUND**

On April 2, 2012, Plaintiffs Stand Up America Now, Wayne Sapp ("Sapp") and Terry Jones ("Jones") filed a two-count Complaint against Defendants City of Dearborn and Ronald Haddad alleging: Freedom of Speech-First Amendment (42 U.S.C. § 1983) (First Claim) and Freedom of Expressive Association–First Amendment (42 U.S.C. § 1983 (Second Claim). On April 4, 2012, Plaintiffs filed a Motion for Temporary Restraining Order. The Court addresses the motion below.

Stand Up America Now is a religious organization incorporated in the State of Florida (Comp., ¶ 7) Stand Up America Now's purpose is to proclaim the Holy Bible to Muslims and to educate people about the threat of Sharia law to our Nation's fundamental principles of freedom by traveling around the country speaking about Christianity at Muslim events and mosques. (Comp., ¶ 8) Sapp and Jones, Christian ministers, are founders and leaders of Sand Up America Now. (Comp., ¶¶ 9-10) They evangelize to non-Christians and speak publicly regarding their religious beliefs. (*Id.*)

Plaintiffs seek to further their ministry by speaking to the public from the grassy across from the Dearborn Islamic Center on Saturday, April 7, 2 012 regarding the dangers of Sharia law and how it threatens American freedoms. (Comp., ¶ 14) Plaintiffs also plan to distribute a flyer which includes Stand Up America Now's contact information and a quotation from the Holy Bible: "Jesus answered, 'I am the way and the truth and the life. No one comes to the Father except through me.' John 14:6." (Comp., ¶¶ 16-17) Plaintiffs chose the particular location in Dearborn because Sharia law is the religious law of Islam and the mosque represents Islam. (Comp., ¶ 18) Plaintiffs believe that Sharia law limits freedoms, including the freedom of speech and freedom of religion. (Comp., ¶ 19) Plaintiffs chose the event date of Saturday, April 7, 2012, because it is Holy Saturday in the Christian religion, the day after Jesus Christ died on the cross in the ultimate sacrifice and the day before Easter Sunday, the foundation of the Christian religion when Plaintiffs believe that God gave mankind new life through the resurrection of Jesus Christ. (Comp., ¶ 20)

On February 16, 2012, Sapp completed a "Special Events Application and Request Form" from the City of Dearborn pursuant to Ordinance No. 17-28(a) requiring any person desiring to sponsor an event to obtain a permit from the chief of police. (Comp., ¶¶ 21-22) Plaintiffs estimate approximately 20-25 people will attend the event and they did not request any services from the City of Dearborn. (Comp., ¶¶ 26-27) Ordinance No. 17-33 requires the sponsor of the event to sign an indemnification agreement with the terms established by the City of Dearborn's legal department. (Comp., ¶ 29)

On March 13, 2012, Lt. David Robinson ("Robinson") of the City of Dearborn Police Department indicated to Sapp that he was "prepared to recommend the approval of this Special Event application," however the completion of the "Hold and Harmless" document would be

required prior to the commencement of the event. (Comp., ¶ 30) On March 26 and 28, 2012, Robinson wrote Sapp a letter indicating that the "Hold and Harmless" agreement must be signed, otherwise, Plaintiffs would not be able to speak on the requested area of public property. (Comp., ¶ 34) Robinson provided a copy of a list of events that required the "Hold and Harmless" agreement, but Plaintiffs claim that those events involved physical exertion, such as running and marching, while their event only involves speech and distribution of a flyer. (Comp., ¶¶ 36-39) Plaintiffs will not sign the "Hold and Harmless" agreement asserting that it would forfeit all legal rights they may have arising from the City's actions and that they should not be forced to sign a one-sided unconscionable contract subject only to the "unbridled" discretion of the City's legal department in order for Plaintiffs to exercise their constitutional rights. (Comp., ¶¶ 33, 45-47)

## II. ANALYSIS

Plaintiffs filed the instant Motion for Temporary Restraining Order citing Fed. R. Civ. P. 65. Rule 65(b) of the Federal Rules of Civil Procedures provides the Court with authority to issue a temporary restraining order as follows:

> **(1)** *Issuing Without Notice*. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts shown by affidavit or by a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;
>
> (B) the movant's attorney certifies to the court in writing any efforts made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

Rule 65(b) is clear that the possibly drastic consequences of a restraining order mandate

careful consideration by a trial court faced with such a request. 1966 Advisory Committee Note to 65(b). Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 91969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507-08; *Workman v. Bredesen,* 486 F.3d 896, 904-05 (6th Cir. 2007).

Addressing the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Newsome v. Norris,* 888 F.3d 371, 378 (6th Cir. 1989). Plaintiffs have shown that they will be irreparably injured if they are unable to hold the April 7, 2012 event since their First Amendment rights to free speech in exercising their religious views and their right to assemble are affected. This factor weighs in Plaintiffs' favor.

As to the likelihood of success on the merits factor, the Court finds that Plaintiffs have shown they are likely to succeed on their claim that the City of Dearborn's ordinance requiring a "Hold and Harmless" agreement prior to holding an event, is unconstitutional and violates Plaintiffs' First

4

Amendment rights. In *Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992), the United States Supreme Court found unconstitutional a city ordinance which required groups to pay a license fee as a condition to engaging in demonstrations on public lands. 505 U.S. at 126-27. The Supreme Court concluded that the ordinance was not content-neutral because the fee assessed depended on the administrator's measure of the amount of hostility likely to be created by the speech based on its content. *Id.* In a case where a city ordinance requires a hold-harmless and indemnity clause, courts have held that a clause requiring the permitee to hold the city harmless from any liability caused by the conduct of the event is unconstitutional. *Long Beach Area Peace Network v. City of Long Beach,* 574 F.3d 1011, 1039 (9th Cir. 2009).

The City of Dearborn's Ordinance No. 17-33 requires the sponsor of an event to sign an indemnification agreement with terms established by the legal department. (Comp., ¶ 29) Based on this language alone, the content of the indemnification agreement leaves unfettered discretion with the legal department. It is well recognized that an ordinance which grants an administrative body or government official unfettered discretion to regulate the licensing of activities protected by the First Amendment is unconstitutional. *Kunz v. New York,* 340 U.S. 290, 294 (1951). Such unrestricted discretion increases the likelihood that the government official may discriminate based upon the content of the "speech" or the viewpoint of the speaker. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 763-64 (1988).

The "Release, Waiver of Liability, and Hold Harmless Agreement" presented to Plaintiffs by the City of Dearborn states:

> In consideration for the right to utilize City of Dearborn property, Standup America! and Wayne Sapp, their employees, representatives, agents, and participants agree to RELEASE AND FOREVER DISCHARGE the City of Dearborn, a municipal corporation, and its

> officers, employees, and agents, from any and all claims, liabilities, or lawsuits, including legal costs and reasonable attorney fees, resulting from their activities on the City of Dearborn property.

(Comp., Ex. 1)  This is clearly an unconstitutional clause which impedes Plaintiffs' First Amendment right to free speech and assembly.  The clause encompasses not only liability for physical harm to the permittees, but also for deprivation of permittees' constitutional rights.  "We think it obvious that permittees cannot be required to waive their right to hold the City liable for its otherwise actionable conduct as a condition of exercising their right to free speech." *Long Beach Area Peace Network,* 574 F.3d at 1040.  The clause also requires permittees to assume legal and financial responsibility even for those activities at the event that are outside of the permittee's control, including activities of the City.  *Id.*  The ordinance requiring the indemnity agreement and the "Hold and Harmless" presented to Plaintiffs are unconditional and violate the First Amendment to the United States Constitution as to Plaintiffs and others who wish to exercise their rights to speak and assemble in the public fora.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiffs' Motion for Temporary Restraining Order **(Doc. No. 5, filed 4/4/2012)** is GRANTED pursuant to Fed. R. Civ. P. 65(b).

IT IS FURTHER ORDERED that Defendants are enjoined from requiring Plaintiffs to sign the agreement entitled, "Release, Waiver of Liability, and Hold Harmless Agreement," (Comp., Ex. 1) prior to Plaintiffs holding their event on April 6, 2012.

IT IS FURTHER ORDERED that although Plaintiffs have not addressed the security requirement set forth in Fed. R. Civ. P. 65(c), the Court will not require a security since the matter

involves a constitutional issue affecting the public.

      IT IS FURTHER ORDERED that Plaintiffs file a proof of service that Defendants were served with this Order.

                          S/Denise Page Hood
                          Denise Page Hood
                          United States District Judge

Dated: April 5, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 5, 2012, by electronic and/or ordinary mail.

                          S/LaShawn R. Saulsberry
                          Case Manager