UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STAND UP AMERICA NOW,
WAYNE SAPP and TERRY JONES,

    Plaintiffs,

                                                     Civil Action No. 12-11471
v.                                              Honorable Denise Page Hood

CITY OF DEARBORN and RONALD
HADDAD,

    Defendants.
_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**and DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    BACKGROUND**

On April 2, 2012, Plaintiffs Stand Up America Now, Wayne Sapp ("Sapp") and Terry Jones ("Jones") filed the instant action against Defendants City of Dearborn ("Dearborn") and Ronald Haddad ("Haddad"). A First Amended Complaint was filed on July 25, 2012 alleging: Freedom of Speech-First Amendment (42 U.S.C. § 1983) (First Claim) and Freedom of Expressive Association–First Amendment (42 U.S.C. § 1983) (Second Claim). On April 4, 2012, Plaintiffs filed a Motion for Temporary Restraining Order. The Court granted the Motion for Temporary Restraining Order on April 5, 2012.

Stand Up America Now is a religious organization incorporated in the State of Florida (1st Am. Comp., ¶ 7) Stand Up America Now's purpose is to proclaim the Holy Bible to Muslims and to educate people about the threat of Sharia law to our Nation's fundamental principles of freedom by traveling around the country speaking about Christianity at Muslim events and mosques. (1st Am. Comp., ¶ 8) Sapp and Jones, Christian ministers, are founders and leaders of Sand Up America

Now. (1st Am. Comp., ¶¶ 9-10) They evangelize to non-Christians and speak publicly regarding their religious beliefs. (*Id.*)

Haddad is the chief of police for the City of Dearborn and is responsible for creating, adopting, and enforcing the rules, regulations, ordinances, laws, policies, procedures, and/or customs of the City. (1st Am. Comp., ¶¶11-12) Plaintiffs allege that the City is one of the most densely populated Muslim communities in the United States, with nearly 30,000 Muslims out of 98,000 inhabitants. (1st Am. Comp., ¶ 13) Plaintiffs seek to further their ministry by speaking to the public from the grassy area across from the Dearborn Islamic Center, which was held on Saturday, April 7, 2012. Their speeches focused on the dangers of Sharia law and how it threatened American freedoms. (1st Am. Comp., ¶¶ 14-15) Plaintiffs also planned to distribute a flyer which included Stand Up America Now's contact information and a quotation from the Holy Bible: "Jesus answered, 'I am the way and the truth and the life. No one comes to the Father except through me.' John 14:6." (1st Am. Comp., ¶¶ 16-17) Plaintiffs chose the particular location in Dearborn because Sharia law is the religious law of Islam and the mosque represents Islam. (1st Am. Comp., ¶ 18) Plaintiffs believe that Sharia law limits freedoms, including the freedom of speech and freedom of religion. (1st Am. Comp., ¶ 19) Plaintiffs chose the event date of Saturday, April 7, 2012, because it is Holy Saturday in the Christian religion, the day after Jesus Christ died on the cross in the ultimate sacrifice and the day before Easter Sunday, the foundation of the Christian religion when Plaintiffs believe that God gave mankind new life through the resurrection of Jesus Christ. (1st Am. Comp., ¶ 20)

On February 16, 2012, Sapp completed a "Special Events Application and Request Form" from the City of Dearborn pursuant to Ordinance No. 17-28(a) requiring any person desiring to

sponsor an event to obtain a permit from the chief of police. (1st Am. Comp., ¶¶ 21-22) Plaintiffs estimated approximately 20-25 people would attend the event; they did not request any services from the City of Dearborn. (1st Am. Comp., ¶¶ 26-27) Ordinance No. 17-33 requires the sponsor of the event to sign an indemnification agreement with the terms established by Dearborn's legal department. (1st Am. Comp., ¶ 29)

On March 13, 2012, Lt. David Robinson ("Robinson") of the City of Dearborn Police Department indicated to Sapp that he was "prepared to recommend the approval of this Special Event application" with the request of completing the "Hold and Harmless" document prior to the commencement of the event. (1st Am. Comp., ¶¶ 30-31) On March 26 and 28, 2012, Robinson wrote Sapp letters indicating that the "Hold and Harmless" agreement must be signed, otherwise, Plaintiffs would not be able to speak on the requested area of public property. (1st Am. Comp., ¶¶ 34, 39) Robinson provided a copy of a list of events that required the "Hold and Harmless" agreement, but Plaintiffs claim that those events involved physical exertion, such as running and marching, while their event only involves speech and distribution of a flyer. (1st Am. Comp., ¶¶ 36-38) Plaintiffs do not have the insurance which would cover Dearborn's "Hold and Harmless" agreement and argue that obtaining insurance to cover the event poses an impossible condition and/or exorbitant costs that Plaintiffs cannot accommodate or afford. (1st Am. Comp., ¶¶ 40-41) Plaintiffs believe that they cannot hold similar events in the future because of the high price and costs imposed by Dearborn by the requirements in the "Hold Harmless" provision. (1st Am. Comp., ¶ 46)

Plaintiffs received the Special Events Permit from Dearborn on April 5, 2012, a few minutes before the Court's issuance of its Temporary Restraining Order. Plaintiffs were not required to

obtain indemnification insurance. However, Plaintiffs assert they intend to hold similar events in Dearborn in the future and should not have to be forced to sign a one-sided, unconscionable contract subject only to the "unbridled" discretion of the City's legal department in order for Plaintiffs to exercise their constitutional rights. (1st Am. Comp., ¶¶ 51-52)

This matter is before the Court on summary judgment motions filed by Plaintiffs and Defendants. Plaintiffs also seek to strike an affidavit submitted by Defendants in their reply brief. Briefs were filed and at the scheduled hearing, the parties waived oral argument.

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be

"no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.     First Amendment (42 U.S.C. § 1983) (Both Claims)

In their First Amended Complaint, Plaintiffs allege that Defendants have deprived and continue to deprive Plaintiffs of their right to engage in religious expression in a traditional public forum in violation of the Free Speech and Freedom of Expressive Association Clauses of the First Amendment as applied to the City of Dearborn under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.  (1st Am. Comp., ¶ 62; First and Second Claims) Specifically, Plaintiffs argue that Ord. No. 17-33 requiring a sponsor of an event to sign an indemnification agreement with terms established by the legal department and a "Hold Harmless" agreement impinge on their Free Speech rights.  Plaintiffs do not argue that the Special Events Ordinance, Ord. No. 17-30, is unconstitutional.  It is clear from their arguments in their response to Defendants' Motion for Summary Judgment and their own motion for summary judgment that Plaintiffs are only alleging that the "Hold Harmless" ordinance and attendant requirement is unconstitutional.

In their Motion for Summary Judgment, Defendants argue that the Special Events Ordinance, Ord. No. 17-30, is content-neutral and applicable to the issuance of special events permit.  Ord. No. 17-32 requires sponsors of special events to enter into a contract with Dearborn for payment of costs for city services and equipment.  Ord. No. 17-33 requires sponsors of special events to sign a "Hold Harmless" agreement.  Defendants assert that these requirements are content neutral and the purpose

of the "Hold Harmless" agreement is for the coordination of use and safety, not the preclusion of particular express.

The Court will address the "Hold Harmless" issue and the ordinance requiring such under Ord. Nos. 17-28(d) and 17-33 since it appears the "Hold Harmless" or indemnification issue is the only issue Plaintiffs are challenging and not any other provisions of Dearborn's Special Events Ordinance.

In *Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992), the United States Supreme Court found unconstitutional a city ordinance which required groups to pay a license fee as a condition to engaging in demonstrations on public lands. 505 U.S. at 126-27. The Supreme Court concluded that the ordinance was not content-neutral because the fee assessed depended on the administrator's measure of the amount of hostility likely to be created by the speech based on its content. *Id.* Prior restraints on speech are disfavored and carry a "heavy presumption" of invalidity. *Id.* at 130. The relevant question is whether a challenged regulation authorizes suppression of speech in advance of its expression. *Id.* Restrictions on speech in a traditional public fora are permissible provided that: 1) they are justified without reference to the content of the regulated speech; 2) they are narrowly tailored to serve a significant government interest; 3) they leave open ample alternative channels for communication fo the information; and 4) a permitting scheme may not delegate overly broad licensing discretion to a government official.

In a case where a city ordinance requires a hold-harmless and indemnity clause, courts have held that a clause requiring the permitee to hold the city harmless from any liability caused by the conduct of the event is unconstitutional. *Long Beach Area Peace Network v. City of Long Beach,* 574 F.3d 1011, 1039 (9th Cir. 2009). It is well recognized that an ordinance which grants an

6

administrative body or government official unfettered discretion to regulate the licensing of activities protected by the First Amendment is unconstitutional. *Kunz v. New York,* 340 U.S. 290, 294 (1951). Such unrestricted discretion increases the likelihood that the government official may discriminate based upon the content of the "speech" or the viewpoint of the speaker. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 763-64 (1988).

Dearborn's Ord. No. 17-28(d) states that "[t]he chief of police may issue a permit immediately upon approval of the permit application and execution and receipt of the indemnification agreement required by section 17.33." (Ord. No. 17-28(d), Pg ID 574) Ord. No. 17-33 entitled "Indemnification agreement" states, "[t]he applicant, the sponsor of the event, and the event organizer shall sign an indemnification agreement with terms established by the legal department." (Ord. No. 17-33, Pg ID 576) The "Hold Harmless" agreement at issue is as follows:

**RELEASE, WAIVER OF LIABILITY, AND HOLD HARMLESS AGREEMENT**

> Standup America! and Wayne Sapp have requested permission to utilize City of Dearborn property located on the grassy median north of Ford Rd. and south of Altar Rd. (as depicted in the attached map) in the City of Dearborn on Saturday, April 7, 2012.
>
> In consideration for the right to utilize City of Dearborn property, Standup America! and Wayne Sapp, their employees, representatives, agents, and participants agree to RELEASE AND FOREVER DISCHARGE the City of Dearborn, a municipal corporation, and its officers, employees, and agents, from any and all claims, liabilities, or lawsuits, including legal costs and reasonable attorney fees, resulting from their activities on the City of Dearborn property.
>
> Standup America! and Wayne Sapp's employees, agents, representatives, and participants have been notified of this Release, are aware of, understand, and fully appreciate all possible risks associated with the participation in the activities on City of Dearborn property on April 7, 2012. These risks could result in damage to property, personal, and/or bodily injury or death, including injuries or death to the individual participants.

>Standup America! and Wayne Sapp hereby agree to defend, indemnify, and hold harmless the City of Dearborn, its officers, employees, agents, representatives, and departments from and against any and all claims an causes of action of any kind arising out of or in connection with their activities on City of Dearborn property.
>
>The undersigned, Wayne Sapp, representative for Standup America! acknowledges that he has the authority to enter into this agreement on behalf of this Standup America!
>
>**I HAVE READ THIS ENTIRE AGREEMENT. I UNDERSTAND IT AND AGREE WITH IT AND THEREFORE SIGN IT AS MY OWN FREE ACT.**
>
>_____       _____
>By: Wayne Sapp                                              Date:
>Standup America!
>
>
>_____       _____
>Witness                                                            Date

(1st Am. Comp., Ex. 1)

Plaintiffs argue that the ordinances relating to the "Hold Harmless" indemnity agreement violate Plaintiffs' right to free speech and assembly under the First Amendment because the terms of the agreement are in the sole discretion of the City's legal department. To this argument, Defendants respond that despite the language in Ord. No. 17-33 as to the legal department's determination of the terms of the indemnification agreement, it is the Chief of Police who makes the final determination with regard to the issuance of special events permits. Defendants assert that the legal department does not consider the content or message when it determines the terms of the agreement. Defendants claim that the payment provision is outlined in Ord. No. 17-32, which provides that event sponsors will be billed for the actual amount of direct and reasonable costs incurred by the city to provide additional services for the event.

Defendants' argument belies the language of Ord. No. 17-33 itself which as noted above, requires the applicant "shall sign an indemnification agreement with terms established by the legal department." Ord. No. 17-33. Ord. No. 17-32 is a different provision which goes to the costs of city services and equipment, not to an indemnification agreement set forth in Ord. No. 17-33. Ord. No. 17-32 states as follows:

>    Sec. 17-32.–Payment of city services.
>
>    (a) The sponsor of a special event who accepts a permit thereby consents to the formation of a contract between the sponsor and the city for payment of costs for city services and equipment as set forth in this section.
>
>    (b) Within 21 days of the conclusion of the special event, the city will send the sponsor a bill for the actual amount of the direct and reasonable costs incurred by the city to provide additional police and public works services for the special event.
>
>    (c) Within 14 days after the date of the bill, the sponsor shall pay to the city the direct and reasonable costs incurred by the city to provide additional police and public works services for the special event.
>
>    (d) The fees under this section shall not apply to parades conducted for the primary purpose of public-issue speech protected by the First Amendment of the U.S. Constitution.

(Ord. No. 17-32, Pg ID 575-76)

Defendant conflate their argument as to the Indemnification agreement with the payment of city services ordinances. These two ordinances are separate and distinct. Ord. No. 17-32 sets forth payment of costs for city services related to the event, whereas Ord No. 17-33 requires a sponsor to sign an indemnification agreement under the terms established by the legal department. Ord. No. 17-28(d) allows the chief of police to issue a permit upon approval of the permit application "and execution and receipt of the indemnification agreement required by section 17-33."

As this Court ruled in its order granting a temporary restraining order, the clause in the agreement itself requiring Plaintiffs to "RELEASE AND FOREVER DISCHARGE the City of Dearborn ... from any and all claims, liabilities, or lawsuits, including legal costs and reasonable attorney fees, resulting from their activities on the City of Dearborn property" is an unconstitutional clause which impedes Plaintiffs' First Amendment rights to free speech and assembly. The Court held that the clause encompasses not only liability for physical harm to the Plaintiffs, but also for deprivation of Plaintiffs' constitutional rights. "We think it obvious that permittees cannot be required to waive their right to hold the City liable for its otherwise actionable conduct as a condition of exercising their right to free speech." *Long Beach Area Peace Network,* 574 F.3d at 1040. The clause also requires permittees to assume legal and financial responsibility even for those activities at the event that are outside of the permittee's control, including activities of the City. *Id.* The ordinance requiring the indemnity agreement and the "Hold Harmless" agreement presented to Plaintiffs are unconditional and violate the First Amendment to the United States Constitution as to Plaintiffs and others who wish to exercise their rights to speak and assemble in the public fora. Ord. No. 17-33 clearly gives the authority to the legal department to establish the terms of any indemnification agreement. This language gives the legal department "unfettered" discretion to set forth the terms of the agreement. Defendants state no argument as to how Ord. No. 17-33, which requires an indemnification agreement, does not violate the constitution as noted in *Long Beach Area Peace Network, supra.* Defendants argue that other provisions of the Special Events Ordinance do not violate the constitution and are content neutral. However, Plaintiffs do not argue that other provisions in the Special Events Ordinance violate their First Amendment rights. They only argue that Ord. No. 17-33 violates their First Amendment rights because it requires an indemnification

agreement.

As noted by Plaintiffs, immediately before the Court issued its Temporary Restraining Order finding the indemnification agreement unconstitutional, Dearborn granted Plaintiffs the permit to hold their event, without requiring Plaintiffs to sign an indemnification agreement. This action by the legal department goes against Defendants' argument that the Special Events Ordinance is applied equally to all. The legal department agreed to waive the indemnification requirement in the one instance, but the requirement remains in Ord. No. 17-33. The action by the legal department in waiving this requirement shows the "unfettered" discretion it has as to Ord. No. 17-33. The Court finds that Plaintiffs are entitled to summary judgment as to their claim that Ord. No. 17-33, requiring Plaintiffs to sign an indemnification agreement, is a violation of their First Amendment rights of Freedom of Speech and Freedom of Expressive Association. The related ordinance, Ord. No. 17-28(d), requiring the chief of police to grant a special events permit only after an indemnification agreement is signed, also violates Plaintiffs' First Amendment rights.

### C.     Motion to Strike

The Court grants Plaintiffs' Motion to Strike the affidavit submitted by Defendants in their reply brief since Plaintiffs lacked notice that the affiant, Licia Yangouyian, was a witness in this case. Fed. R. Civ. P. 37(c).

### III.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 33) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. No. 34)

...

is GRANTED. Plaintiffs may file the appropriate documents and motion as to costs and fees as required by E.D. Mich. LR 54.1 and 54.1.2.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike Reply (Doc. No. 50) is GRANTED.

IT IS FURTHER ORDERED that Judgment will be entered in favor of Plaintiffs and against Defendants. The City of Dearborn's Ord. Nos. 17-33 and 17-28(d) are declared unconstitutional and are in violation of Plaintiffs' First Amendment rights.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: August 30, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 30, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager